IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

JEREMY TODD NEWHART,

           Plaintiff,

v.                                    CIVIL ACTION NO.   6:13-cv-01606

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Jeremy Todd Newhart's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2].[1]  By Standing Order entered September 2, 2010, and filed in this case on January 30, 2013, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation ("PF&R").  Following Magistrate Judge Stanley's retirement, this action was referred on April 8, 2014, to United States Magistrate Judge Dwane L. Tinsley.  Magistrate Judge Tinsley filed his PF&R [ECF 14] on November 18, 2013, recommending that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket.

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, replacing the former Social Security Commissioner, Michael J. Astrue, the original Defendant in this case.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Colvin is automatically substituted as the Defendant.

been made. The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed timely objections to the PF&R on December 3, 2013. For the reasons that follow, the Court **SUSTAINS** Plaintiff's objections, **DECLINES** to adopt the PF&R, **REMANDS** this case for further proceedings in accordance with this opinion, and **DIRECTS** the Clerk to remove this case from the Court's docket.

## I. PROCEDURAL BACKGROUND

The facts concerning this matter are more fully set forth in the PF&R, and need not be repeated here. In short, Plaintiff protectively filed an application for disability insurance benefits ("DIB") on July 1, 2010, alleging disability beginning March 1, 2009. (ECF 9-4 at 5; ECF 9-5 at 2−3.) Plaintiff alleged disability due to bipolar depression and back injury. (ECF 9-4 at 5, 11; ECF 9-5 at 5.) His application was denied initially and upon reconsideration. (ECF 9-3 at 2−3; ECF 9-4 at 5−13.)

On November 14, 2010, Administrative Law Judge Jon K. Johnson ("ALJ") conducted a video hearing. (ECF 9-2 at 31−53.) On December 1, 2011, ALJ Johnson issued an unfavorable

2

written decision for Plaintiff. (ECF 9-2 at 8−28.) Following Plaintiff's administrative appeal, by written notice dated December 18, 2012, the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review. (ECF 9-2 at 1−4.) Thereafter, on January 30, 2013, Plaintiff filed his Complaint in this Court. (ECF 2.)

## II. PLAINTIFF'S OBJECTIONS

Plaintiff makes one objection to the PF&R, arguing that the magistrate judge erred in finding that the ALJ did not fail to accord adequate weight to the opinion of Plaintiff's primary treating psychiatrist. (ECF 15.) This objection really appears to have two parts. (ECF 15.) First, Plaintiff asserts that the ALJ erred in failing to give good reasons for discounting an opinion of Plaintiff's treating psychiatrist, Dr. Amelia McPeak. (ECF 15 at 3, 5.) Second, Plaintiff asserts that the ALJ erred by "ignoring" a subsequent opinion by Dr. McPeak. (ECF 15 at 4, 5.)

The Commissioner did not file a response to Plaintiff's objections. This matter is now ripe for review.

## III. STANDARD OF REVIEW

The Court has a narrow role in reviewing claims brought under the Social Security Act. This Court is authorized to review the Commissioner's denial of benefits, as set forth by her designee, the ALJ, under 42 U.S.C. §§ 405(g) and 1383(c)(3). Its review is limited to determining whether the contested factual findings of the Commissioner are supported by substantial evidence and were reached through application of correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

If substantial evidence exists, the Commissioner's final decision must be affirmed.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Craig*, 76 F.3d at 589 (citing *Hays*, 907 F.2d at 1456).  Assuming error by the Commissioner, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached by the ALJ.  *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ("While the general rule is that 'an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained,' reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached. . . .'") (citations omitted).

## IV.   DISCUSSION

Plaintiff's objections challenge the ALJ's decision as not having been made pursuant to "proper legal standards."  (ECF 15 at 2.)  Specifically, Plaintiff contends that the ALJ violated 20 C.F.R. § 404.1527[2] by failing to provide adequate reasoning for his rejection of one of the opinions of Plaintiff's treating psychiatrist, Dr. McPeak, and failing to acknowledge altogether another of Dr. McPeak's opinions.

---

[2] In his objection, Plaintiff also repeatedly cites to 20 C.F.R. § 416.927 (ECF 15 at 2−3), which regulation concerns the evaluation of opinion evidence for applications for Supplemental Security Income ("SSI").  Plaintiff also appears

A. *Treating Source Rule*

Pursuant to 20 C.F.R. § 404.1527(e)(1)−(2) (2011)[3] an ALJ will use medical sources, including an individual's treating source, to provide evidence, including opinions, on the nature and severity of that person's impairments. Although the ALJ may also consider opinions from medical sources on issues such as a person's residual functional capacity, whether his or her impairment(s) meets or equals the requirements of any impairments in the Social Security Administration's Listing of Impairments, and the determination of whether someone is disabled, such determinations are ultimately administrative findings reserved to the Commissioner. *Id.* A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2) (2011).

Generally, the ALJ will give more weight to opinions from a person's treating sources, which sources are likely to be the medical professionals most able to provide a detailed,

---

to have cited a jurisdictional statute for seeking court review of an SSI decision in his Complaint. (ECF 2 at 2; ECF 9-2 at 4.) Plaintiff, however, appears to have only made a DIB application, and not one for SSI (ECF 9-5 at 5), and the ALJ's decision concerned only Plaintiff's "Title II application for a period of disability and disability insurance benefits" (ECF 9-2 at 11, 22). For purposes of Plaintiff's instant objection, however, the discrepancy makes no difference because 20 C.F.R. § 416.927's provisions regarding the treating source rule wholly track those provisions of 20 C.F.R. § 404.1527. Accordingly, to the extent that Plaintiff also relies on 20 C.F.R. § 416.927 the result is the same. *See generally Brown v. Astrue*, 5:11CV00107, 2012 WL 3986323, at *1, 4−5 (E.D. Ark. Sept. 11, 2012) (analyzing treating source rule under both 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 where plaintiff appealed denial of both DIB and SSI applications); *Pratt v. Astrue*, 803 F. Supp. 2d. 1277, 1279, 1282−85 (D. Kan. 2011) (same).

[3] The citations herein are to the pertinent regulations in effect at the time of Plaintiff's application. The Court observes that 20 C.F.R. § 404.1527 (and 20 C.F.R. § 416.927) was subsequently amended to, as pertinent here, re-designate paragraphs (d) through (f) as (c) through (e). *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01, 10656, 10657 (Feb. 23, 2012) (to be codified at 20 C.F.R. pts. 404 and 416). Accordingly, although the substance of the pertinent regulations discussed herein is unchanged, the citations herein do not reflect the current designation of paragraphs in 20 C.F.R. § 404.1527 (and 20 C.F.R. § 416.927).

longitudinal picture of a person's medical impairment(s).  20 C.F.R. § 404.1527(d)(2) (2011).  If the ALJ finds that a treating source's opinion on the issues of the nature and severity of a person's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the ALJ will give that treating source opinion controlling weight.  20 C.F.R. § 404.1527(d)(2); *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  Thus, '[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'") (citation omitted).

Importantly, if the treating source opinion is not afforded controlling weight because it does not meet these criteria, the ALJ must then determine what, if any, weight to give the opinion by examining several regulatory factors.  These factors include the length of treatment and frequency of examination, the nature and extent of the treatment relationship, the opinion's support by relevant medical evidence, the opinion's consistency with the record as a whole, the treating source's specialization, and other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2)(i)−(ii), (d)(3)−(6); *see generally Burch v. Apfel*, 9 Fed. App'x 255, 259 (4th Cir. 2001) (per curiam) (stating that if a treating physician's opinion is "not entitled to controlling weight, the value of the opinion must be weighed and the ALJ *must consider* [the factors set forth in 20 C.F.R. § 404.1527(d)]") (emphasis added); *Winford v. Chater,* 917 F.Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not

6

entitled to controlling weight, he *must* then consider the weight to be given to the physician's opinion by applying five factors identified in [20 C.F.R. § 404.1527(d)] . . . .") (emphasis added).

The regulation contains a clear pronouncement that the ALJ "will always give good reasons in our notice of determination or decisions for the weight we give [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2). Furthermore, a Social Security Rule explains that every Social Security Administration decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, and it "also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544–45 (6th Cir. 2004) (citing *Halloran v. Barnhart,* 362 F.3d 28, 32–33 (2d Cir. 2004)).

The Supreme Court has long recognized a federal agency's obligation to abide by its duly promulgated regulations. *See, e.g.*, *Vitarelli v. Seaton,* 359 U.S. 535, 545 (1959); *Accardi v. Shaughnessy,* 347 U.S. 260, 267 (1954). Consistent with this principle, federal courts have remanded decisions of the Commissioner when they fail to articulate "good reasons" for discrediting the opinion of a treating source, as expressly required by 20 C.F.R. § 404.1527(d)(2). *See Saul v. Astrue*, 2:09-CV-1008, 2011 WL 1229781, at *3 (S.D. W. Va. Mar. 28, 2011) (Johnston, J.) (collecting cases).

7

*B. ALJ's Finding Regarding Dr. McPeak*

In his decision, the ALJ acknowledged that Dr. McPeak was Plaintiff's "treating psychiatrist." (ECF 9-2 at 21.) Accordingly, any opinion evidence from Dr. McPeak relating to the nature and severity of Plaintiff's impairments should have been afforded controlling weight or otherwise weighed and explained pursuant to the factors set forth in 20 C.F.R. § 404.1527(c)(2), (d).

At issue here are two written opinions issued by Dr. McPeak on behalf of Plaintiff, one dated August 20, 2010,[4] and the other dated November 9, 2011.

On August, 20, 2010, Dr. McPeak completed a Routine Mental Abstract Form for the State of West Virginia's Disability Determination Section. (ECF 9-8 at 30−33.) Dr. McPeak completed this form based on a June 30, 2010, evaluation of Plaintiff, and indicated, in pertinent part, that Plaintiff had mildly deficient judgment and insight,[5] and an anxious and irritable mood. (ECF 9-8 at 31.) In this opinion, Dr. McPeak stated that Plaintiff's diagnoses were "bipolar disorder NOS most recent episode depressed [unintelligible] w/o psychosis" and "generalized

---

[4] In his objections to the PF&R, Plaintiff states: "In this case the ALJ's sole stated reason for giving only 'some weight' to the *July 27, 2009*, opinion of treating physician Dr. McPeak was that it was not supported by the 'totality of the evidence' . . . ." (ECF 15 at 3−4 (emphasis added).) The portion of the ALJ's decision that Plaintiff references, however, discusses Dr. McPeak's *August 20, 2010*, opinion. The ALJ specifically identifies that opinion by date in his decision (ECF 9-2 at 21) and the ALJ's record citation is Dr. McPeak's opinion bearing that date (ECF 9-2 at 21; ECF 9-8 at 30−33). Moreover, Plaintiff's brief in support of judgment on the pleadings before the magistrate judge discusses the August 20, 2010, report, (ECF 11 at 4), as does the Commissioner's response (ECF 12 at 15−17). Dr. McPeak's August 20, 2010, opinion also noted that Plaintiff had "[b]een seen since November 10, 2009, here." (ECF 9-8 at 30.) Finally, in his objection to the PF&R Plaintiff does not provide record citation to any "July 27, 2009, opinion" by Dr. McPeak, nor has any such opinion been identified in the record. Accordingly, based on the context of Plaintiff's argument, and his clear reference to the portion of the ALJ's decision in which the ALJ discusses the "August, 20, 2010" opinion of Dr. McPeak, the Court concludes that Plaintiff must be referencing the ALJ's treatment of Dr. McPeak's August 20, 2010, opinion.

[5] As the magistrate judge noted, Dr. McPeak's examination notes from June 30, 2010, indicated that Claimant's insight and judgment were "fair." That description, however, was not an available pre-determined description from which Dr. McPeak could choose to characterize Plaintiff's judgment and insight on the Routine Mental Form. (ECF 9-8 at 31, 34.)

anxiety disorder." (ECF 9-8 at 33.) Dr. McPeak opined that Plaintiff was unable to maintain employment for prolonged periods of time in part due to persistent depression and anxiety, which diagnoses affected his social interaction and task performance. (ECF 9-8 at 33.) Included with the completed form were examination notes from Dr. McPeak's treatment of Plaintiff. (ECF 9-8 at 34−49.)

On November 9, 2011, Dr. McPeak completed a Mental Assessment of Ability to do Work-Related Activities form based on an examination of Plaintiff. (ECF 9-19 at 27−29.) In her responses, Dr. McPeak indicated that Plaintiff had marked or extreme limitations[6] in eight of fifteen work-related mental activities relating to Plaintiff's ability to make occupational adjustments, performance adjustments, and personal social adjustments, including an extreme impairment to "complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (ECF 9-19 at 28−29.) Dr. McPeak noted Plaintiff's "persistent depression and anxiety" as resulting in significant problems with dealing with the public and work stressors, and that Plaintiff frequently felt mistreated by supervisors and got into interpersonal conflicts. (ECF 9-19 at 28.) She further described that Plaintiff had "significant memory/attention problems secondary to generalized anxiety, social anxiety and depression." (ECF 9-19 at 28.) Dr. McPeak also stated that Plaintiff's social anxiety and depression interfered severely with social situations and work environments, and that Plaintiff would need frequent breaks in order to be in a work environment, which would interfere with his pace. (ECF 9-19 at 29.)

---

[6] The form defines "marked" limitations as those in which 20 to 50 percent of the workday would be affected to the point of non-productivity, and "extreme" limitations as those in which there is no useful ability to function and more than 50 percent of the workday would be affected to the point of non-productivity. (ECF 9-19 at 27.)

9

At the hearing, both of Dr. McPeak's opinions were noted (ECF 9-2 at 33−34, 48), and Plaintiff's representative asked that the ALJ assign significant weight to Dr. McPeak's mental residual functional capacity opinion (ECF 9-2 at 53).

In evaluating Plaintiff's "alleged mental impairments" as part of determining Plaintiff's residual functional capacity, the ALJ noted that in Dr. McPeak's August 20, 2010, opinion she reported that Plaintiff was unable to maintain employment for prolonged period of time in part due to persistent depression and anxiety which have affected his socialization and task performance. (ECF 9-2 at 21.) The ALJ gave "some weight to the opinion of this treating psychiatrist" but found "that the severity of the opined limitations is not supported by the totality of the record." (*Id.*) The ALJ further noted that certain statements such as whether a claimant is "'disabled,' 'unable to work,' can or cannot perform a past job, meets a Listing or the like are not medical opinions but are administrative findings . . . reserved to the Commissioner." (*Id.*) The ALJ did not further explain his reasons for discounting Dr. McPeak's August 20, 2010, opinion, and did not address Dr. McPeak's November 9, 2011, opinion at all.

*C. Analysis*

The PF&R appears to conclude that the ALJ's findings regarding the treating physician's opinions were supported by substantial evidence, and that, therefore, the ALJ did not err in according only "some weight" to the opinion or opinions of Dr. McPeak. (ECF 14 at 10, 17.)

To the extent that Plaintiff contends that the ALJ erred in failing to credit Dr. McPeak's opinions on issues such as Plaintiff's actual residual functional capacity or status as disabled, the Court rejects that conclusion. Such opinions as to whether an individual meets the statutory

10

definition of disabled and his or her residual functional capacity are administrative findings reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1)−(2).

To the extent that Plaintiff contends, however, that the ALJ erred in failing to give good reasons for discounting Dr. McPeak's August 20, 2010, opinion as to the nature and severity of Plaintiff's impairments, and in failing to address Dr. McPeak's November 9, 2011, opinion as to the same, the Court agrees.

With respect to Dr. McPeak's August 20, 2010, opinion, the ALJ stated that his reason for giving "some weight" to this treating psychiatrist opinion was that he found that the "severity of the opined limitations is not supported by the totality of the record." (ECF 9-2 at 21.) This explanation is not consistent with the provisions of 20 C.F.R. § 404.1527 for at least two reasons.

First, pursuant to section 404.1527(d)(2), a treating source's opinion will be given controlling weight if it well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." Presumably, the ALJ found that Dr. McPeak's opinion did not meet this threshold because he assigned it only "some weight." The ALJ's "totality of the record" rationale, however, is not necessarily consistent with the scope of the regulation. This is so because a treating source's opinion could be "not inconsistent with the other substantial evidence" in the record but still not "supported by the totality of the record." Indeed, all that would be required to meet the "totality" standard articulated by the ALJ is one statement in the record that is inconsistent with the treating source's opinion.

Second, when a treating source's opinion is not given controlling weight, the ALJ must give "good reasons" for the weight that is ultimately given to the treating source's opinion. Here,

11

the ALJ's conclusory statement does not adequately explain why Dr. McPeak's August 20, 2010, opinion was assigned only "some weight." Moreover, the "totality" standard that the ALJ referenced is not specifically listed among the factors listed in section 404.1527(d)(2)−(6). To the extent that the ALJ was invoking the consistency factor described in section 404.1527(d)(4), the ALJ did not explain how or why Dr. McPeak's opinion was inconsistent with the record as a whole, or, indeed how consistent or inconsistent it was. Absent such explanation, the logical connection between "some weight" and the opinion not being "supported by the totality of the record" is difficult to discern, and the connection is not self-evident. The ALJ also did not address any of the other potentially relevant factors.

With respect to Dr. McPeak's November 9, 2011, opinion, at least some of the opinions therein appear to describe "medical/clinical findings" that support the assessment of Plaintiff's described limitations (ECF 9-19 at 28−29). The ALJ, however, made no mention of this opinion in his decision. (ECF 9-2 at 11−23.)

The Commissioner did not respond to Plaintiff's objections to the PF&R, but the arguments made in her response brief before the magistrate judge with respect to this omission are not persuasive. The Court cannot agree with the Commissioner's suggestion that the ALJ "implicitly discounted" this opinion. (ECF 12 at 16.) The Commissioner's brief offers many plausible reasons for why the ALJ *could have* potentially declined to afford this opinion controlling weight, but none of those explanations satisfactorily demonstrate that the ALJ did, in fact, consider the opinion. (ECF 12 at 16, 17 n.14.) Moreover, the Commissioner appears to acknowledge the potential impact such opinion would have on Plaintiff's case had it been both considered and afforded controlling weight, noting in her response that "[u]nquestionably, if this

12

opinion were credited, Plaintiff would be unable to engage in competitive work under the Act." (ECF 12 at 10.)  *Cf. Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (remanding where the court could not "tell if significant probative evidence was not credited or simply ignored") (quotations and citation omitted).

Ultimately, not only did the ALJ fail to "give good reasons" for his decision to only give "some weight" to those portions of Dr. McPeak's opinion of August 20, 2010, that were relevant to the ALJ's determination of Plaintiff's residual functional capacity, but he also failed to acknowledge the existence of Dr. McPeak's November 9, 2011, opinion.  As a treating psychiatrist, Dr. McPeak's opinions on the nature and severity of Plaintiff's impairment(s) should have been afforded controlling weight or evaluated according to the factors listed in 20 C.F.R. § 404.1527(d)(2)−(6).  The ALJ's failure to adequately explain the weight given these treating source opinions, and, indeed to explain whether both opinions were even considered, is inconsistent with the pertinent regulations in 20 C.F.R. §§ 404.1527.  Accordingly, the Court concludes that remand is appropriate to permit the ALJ to clearly consider all of the treating psychiatrist's opinions, to state what weight, if any, such opinions are properly afforded, and, if they are not given controlling weight, to state the good reasons for that determination.  *See Saul*, 2011 WL 1229781 at *5 (remanding where ALJ failed to comply with 20 C.F.R. § 404.1527 by neglecting to provide any reasons for the rejection of a treating source opinion); *Valley v. Astrue*, 3:11-cv-260-HEH, 2012 WL 3257876, at *1, 6 (E.D. Va. Aug. 8, 2012) (determining that remand was appropriate where the ALJ gave "little probative weight" to the opinion of Plaintiff's treating physician without sufficient explanation); *Aceto v. Comm'r of Soc. Sec.*, 6:08-CV-169 FJS, 2012 WL 5876640, at *14−17 (N.D.N.Y. Nov. 20, 2012) (finding that remand was required where the

13

ALJ afforded "limited" or "moderate" weight to treating physicians' opinions without providing good reasons for not crediting those opinions and also failed to mention, let alone explain, whether the treating sources' opinions were supported by medical evidence or contradicted by other substantial evidence in the record); *see also Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999) (noting that failure by the Commissioner to provide "good reasons" for not crediting the opinion of a treating physician is a ground for remand).[7]

### V. CONCLUSION

For these reasons, the Court **SUSTAINS** Plaintiff's objections, **DECLINES** to adopt the PF&R, **REMANDS** this case for further proceedings in accordance with the Court's opinion, and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 31, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[7] Neither the Commissioner nor Plaintiff have addressed whether the ALJ's failure to adequately explain the reasons for not giving Dr. McPeak's opinions controlling weight amounts to harmless error. (ECF 11 at 2−7; ECF 12 at 15−18; ECF 15.) The Court observes that to the extent such standard applies here, in light of the Commissioner's recognition that "[u]nquestionably, if [Dr. McPeak's November 9, 2011] opinion were credited, Plaintiff would be unable to engage in competitive work under the Act" (ECF 12 at 10), it would be satisfied here. *See generally Walters v. Astrue*, 444 F. App'x 913, 919 (7th Cir. 2011) (noting that "an error in failing to analyze and explain important evidence is not harmless simply because the ALJ could have addressed that evidence in a way that would survive substantial-evidence review"); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (explaining that failure to satisfy the treating physician rule generally requires remand, particularly where unconsidered reports were significantly more favorable to the plaintiff than those reports that were considered) (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *cf. Parrish v. Colvin*, 3:13CV46-JRS, 2014 WL 412558, at *11 (E.D. Va. Feb. 3, 2014) (report and recommendation adopted) (explaining that the Fourth Circuit has yet to address the application of the harmless error rule in the social security disability context in a published opinion, but has applied the rule in two unpublished opinions reviewing appeals denying Social Security benefits).